**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**LAFAYETTE DIVISION**

JAMES RUCKER                        )
                                    )
            Plaintiff,              )
                                    )
        v.                          )           Cause No.: 4:21-cv-00013
                                    )
CITY OF DELPHI, INDIANA,            )
CARROLL COUNTY, INDIANA,            )           **JURY TRIAL REQUESTED**
FORMER DELPHI POLICE CHIEF          )
STEVE MULLIN, in his individual     )
capacity, DELPHI POLICE CHIEF       )
BROOK MCCAIN, in his official capacity,  )
CARROLL COUNTY SHERIFF              )
TOBE LEAZENBY, in his official and  )
individual capacities, OFFICER COLIN )
DECKARD, in his official and individual )
capacities, OFFICER ALEX PARKINSON, )
in his official and individual capacities, and )
DEPUTY DREW YODER, in his official  )
and individual capacities.          )
                                    )
            Defendants.             )

## COMPLAINT FOR DAMAGES

Plaintiff, James Rucker, for his Complaint for Damages against City of Delphi, Indiana;

Carroll County, Indiana; Former Delphi Police Chief Steve Mullin, in his individual capacity;

Delphi Police Chief Brook McCain, in his official capacity; Carroll County Sheriff Tobe

Leazenby, in his official and individual capacities; Officer Colin Deckard, in his official and

individual capacities; Officer Alex Parkinson, in his official and individual capacities; and Deputy

Drew Yoder, in his official and individual capacities, states as follows:

### INTRODUCTION

1.      Plaintiff seeks money damages against Defendants for violations of rights as guaranteed

        under the United States Constitution and/or Indiana law.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue lies in the United States District Court for the Northern District of Indiana because all or a substantial portion of these events or omissions giving rise to this Complaint occurred in or around Carroll County, Indiana, which is located in the Northern District of Indiana. *See* 28 U.S.C. § 1391(b).

5. Plaintiff timely served a Notice of Tort Claim upon Defendants pursuant to Indiana Code § 34-13-3-8 on February 13, 2019.

6. Plaintiff timely filed this Complaint to bring the claims set forth herein.

## PARTIES

7. Plaintiff is an adult citizen of the United States of America and a resident of Delphi, Indiana, at all times relevant to this Complaint.

8. City of Delphi, Indiana, (hereinafter "Defendant Delphi") is a municipality located in Carroll County, Indiana, and the State of Indiana, which includes the Delphi Police Department (hereinafter "DPD").

9. Carroll County, Indiana, (hereinafter "Defendant Carroll County") is a municipal corporation located in the State of Indiana, which includes the Carroll County Sheriff's Department (hereinafter "CCSD").

10.  Former Delphi Police Chief Steve Mullin (hereinafter "Chief Mullin" or "Defendant Mullin") was at all times relevant to this Complaint, the duly appointed Chief of Police of the DPD.

11.  Defendant Mullin has since vacated the position of Delphi Police Chief, and is currently employed as the lead criminal investigator for the Carroll County Prosecutor's Office.

12.  Delphi Police Chief Brook McCain (hereinafter "Chief McCain" or "Defendant McCain") is currently the duly appointed Chief of Police of the DPD.

13.  Carroll County Sheriff Tobe Leazenby (hereinafter "Sheriff Leazenby" or "Defendant Leazenby") is at the time of filing, and was at all times relevant to this Complaint, the duly appointed Sheriff of the CCSD.

14.  Officer Colin Deckard (hereinafter "Officer Deckard" or "Defendant Deckard") is, or was at all times relevant to this Complaint, a law enforcement officer and/or employee of the DPD.

15.  Officer Alex Parkinson (hereinafter "Officer Parkinson" or "Defendant Parkinson") is, or was at all times relevant to this Complaint, a law enforcement officer and/or employee of the DPD.

16.  Deputy Drew Yoder (hereinafter "Deputy Yoder" or "Defendant Yoder") is, or was at all times relevant to this Complaint, a law enforcement officer and/or employee of the CCSD.

**FACTUAL BACKGROUND**

17.  On or about February 9, 2019, between the hours of 11:00 p.m. and 12:00 a.m., Defendants Parkinson and Deckard responded to a dispatch call to the parking lot of the Citgo gas station located at 220 West Main Street, Delphi, Indiana 46923 (hereinafter "the Citgo").

18.　The Citgo lies on the southeast corner of the intersection of Main Street and South Wabash Street, with Main Street abutting the northern property boundary, South Wabash Street abutting the western property boundary, and two unnamed alleys abutting the eastern and southern property boundaries.

19.　At all times relevant hereto, the incident location had sparse lighting and was dark, especially in the alley areas.

20.　West Front Street lies to the south of the southern unnamed alley abutting the southern property boundary.

21.　Plaintiff resided in a house located at 203 West Front, Delphi, Indiana 46923, between the southern unnamed alley abutting the southern property boundary and West Front Street.

22.　Defendant Parkinson arrived first on the scene, parked his vehicle between Main Street and the Citgo's gas pumps near the northern property boundary.

23.　Defendant Parkinson saw an unidentifiable figure in the area behind the Citgo near the southern alley area.

24.　Defendant Decker arrived shortly thereafter.

25.　Defendant Parkinson radioed and/or communicated to Defendant Decker that a subject was in the alley areas on the southern property border.

26.　Defendant Decker recognized that Plaintiff's property was located in that general direction, as he had previously worked a theft case in which Plaintiff was a victim.

27.　Defendant Decker approached the southern alley area, parked his vehicle in the alley, approached Plaintiff's property line, and saw Plaintiff on his property.

28.　Defendant Decker approached Plaintiff in full DPD uniform and spoke authoritatively to Plaintiff.

29.  Defendant Decker commanded Plaintiff directly by name to leave his property and speak with Defendant Decker in the southern alley.

30.  Plaintiff complied with Defendant Decker's order and walked towards Defendant Decker with his hands clearly raised in the air above his head while remaining on his property.

31.  Defendant Decker then asked Plaintiff if he had any weapons on him, and Plaintiff answered in the negative.

32.  Defendant Decker then asked if he could perform a pat down search of Plaintiff's person, Plaintiff did not respond verbally.

33.  Plaintiff turned around and backed up towards Defendant Decker with his hands still raised above his head.

34.  Defendant Decker began performing a pat down search of Plaintiff's person.

35.  At this point, Defendant Decker did not have reasonable suspicion that Plaintiff had committed a crime.

36.  Defendant Decker subsequently stated under the pains and penalties of perjury that at this point he did not have reasonable suspicion that Plaintiff had committed a crime.

37.  At this point, Defendant Decker did not have probable cause that Plaintiff had committed a crime.

38.  Defendant Decker subsequently stated under the pains and penalties of perjury that at this point he did not have probable cause that Plaintiff had committed a crime.

39.  During the pat down search, Defendant Decker felt a long, rectangular, hard object in Plaintiff's right pocket.

40.  Plaintiff then dropped his hands to his side, turned around, faced Defendant Decker, and backed up a few feet.

41.   Defendant Decker then commanded Plaintiff to leave his property and go to Defendant Decker's vehicle.

42.   No other law enforcement officers were present at the scene at this time.

43.   Plaintiff slowly turned around and began walking toward his house where his wife and children were sleeping.

44.   At this point, Plaintiff did not threaten Defendant Decker.

45.   Defendant Decker subsequently stated under the pains and penalties of perjury that Plaintiff did not threaten him.

46.   At this point, Plaintiff did not pull a weapon on Defendant Decker.

47.   Defendant Decker subsequently stated under the pains and penalties of perjury that Plaintiff did not pull a weapon on him.

48.   Defendant Decker then drew his TASER, aimed the laser pointer at the middle of the Plaintiff's back, and ordered the Plaintiff to stop.

49.   Plaintiff continued to walk toward his house, and Defendant Decker deployed his TASER to the Plaintiff's back.

50.   Defendant Decker's TASER deployed 50,000 volts of electricity for five seconds into the back of the Plaintiff.

51.   As a result, the Plaintiff fell to the ground on his hands and knees.

52.   Plaintiff then got to his feet and turned toward Defendant Decker with the TASER probes still connected to the Plaintiff's back.

53.   At this time, Defendant Yoder arrived on the scene.

54.   Defendant Yoder exited his vehicle and immediately drew his own TASER.

55. Defendant Decker and Defendant Yoder ordered the Plaintiff to the ground, and Plaintiff remained still without advancing toward Defendant Decker.

56. Defendant Decker then deployed his second TASER cartridge to the Plaintiff's lower stomach area.

57. Defendant Decker's TASER deployed 50,000 volts of electricity for five seconds into the stomach of the Plaintiff, and the Plaintiff fell to the ground on his hands and knees again.

58. Defendant Yoder began giving Plaintiff verbal commands.

59. At this point, Defendant Yoder did not have reasonable suspicion that Plaintiff had committed a crime.

60. Defendant Yoder subsequently stated under the pains and penalties of perjury that at this point he did not have reasonable suspicion that Plaintiff had committed a crime.

61. At this point, Defendant Yoder did not have probable cause that Plaintiff had committed a crime.

62. Defendant Yoder subsequently stated under the pains and penalties of perjury that at this point he did not have probable cause that Plaintiff had committed a crime.

63. Plaintiff then began to try to stand up, and Defendant Yoder drew his TASER, aimed at the Plaintiff, and deployed his first cartridge.

64. Defendant Yoder's TASER deployed 50,000 volts of electricity for five seconds into the Plaintiff.

65. As a result, the Plaintiff fell to the ground on his knees facing Defendant Decker and Defendant Yoder.

66. Plaintiff did not threaten Defendant Yoder prior to the deployment of his TASER cartridge.

67.  Defendant Yoder subsequently stated under the pains and penalties of perjury that Plaintiff did not threaten him prior to the deployment of his TASER cartridge.

68.  Plaintiff did not approach Defendant Yoder prior to the deployment of his TASER cartridge.

69.  Defendant Yoder subsequently stated under the pains and penalties of perjury that Plaintiff did not approach him prior to the deployment of his TASER cartridge.

70.  Plaintiff did not pull out a weapon on Defendant Yoder prior to the deployment of his TASER cartridge.

71.  Defendant Yoder subsequently stated under the pains and penalties of perjury that he did not see Plaintiff with a weapon prior to the deployment of his TASER cartridge.

72.  At that time, Defendant Parkinson arrived on the scene.

73.  Defendant Decker, Defendant Parkinson, and Defendant Yoder then surrounded the Plaintiff while he was on his knees.

74.  Defendant Parkinson circled to the back of the Plaintiff and pushed him facedown to the ground without giving any verbal direction or announcement to the Plaintiff.

75.  At this point, Defendant Parkinson did not have reasonable suspicion that Plaintiff had committed a crime.

76.  Defendant Parkinson subsequently stated under the pains and penalties of perjury that at this time he did not have reasonable suspicion that Plaintiff had committed a crime.

77.  At this point, Defendant Parkinson did not have probable cause that Plaintiff had committed a crime.

78.  Defendant Parkinson subsequently stated under the pains and penalties of perjury that at this time he did not have probable cause that Plaintiff had committed a crime.

79.   Defendant Parkinson then positioned himself on the Plaintiff's back and attempted to gain control of the Plaintiff's left arm, which was trapped under the Plaintiff's body.

80.   Defendant Decker and Defendant Yoder then attempted to gain control of the Plaintiff' right arm, which was trapped under the Plaintiff's body.

81.   Plaintiff is a six-foot tall, three-hundred-pound male whose body weight pinned his arms beneath his body as the officer Defendants pinned him to the ground.

82.   After a few moments, Defendant Yoder verbally indicated to Defendant Decker and Defendant Parkinson that Defendant Yoder was going to deploy police canine Micky (hereinafter "police canine").

83.   Plaintiff did not threaten Defendant Yoder prior to the deployment of the police canine.

84.   Defendant Yoder subsequently stated under the pains and penalties of perjury that Plaintiff did not threaten him prior to the deployment of the police canine.

85.   Plaintiff did not pull a weapon on Defendant Yoder prior to the deployment of the police canine.

86.   Defendant Yoder subsequently stated under the pains and penalties of perjury that he did not see Plaintiff with a weapon prior to the deployment of the police canine.

87.   Defendant Yoder then disengaged and started moving toward his police vehicle, but ultimately decided to use his "K-9 door popper" rather than physically releasing the police canine.

88.   A "K-9 door popper" is a device which allows for the remote deployment of a police canine from a police vehicle.

89.   At that time, Defendant Yoder's vehicle was ten feet away from the Plaintiff.

90.  Defendants Parkinson and Defendant Decker were still restraining the Plaintiff when Defendant Yoder engaged his "K-9 door popper" to release the police canine.

91.  The police canine deployed from Defendant Yoder's vehicle, sprinted the distance between Defendant Yoder's vehicle and the Plaintiff, and immediately latched to Plaintiff's upper right arm and began ripping and pulling.

92.  Defendant Parkinson disengaged from the Plaintiff while Defendant Decker continued to restrain the Plaintiff's left arm.

93.  After a few minutes, the police canine released and bit the Plaintiff's right arm again, and continued ripping and tearing the musculature of Plaintiff's right arm.

94.  The second latch by the police canine lasted several minutes.

95.  Plaintiff was able to turn onto his left side and attempted to get the police canine off of him.

96.  Defendant Yoder then delivered a closed-fist punch to the Plaintiff's face.

97.  Plaintiff fell back to the ground following the punch to the face, and the police canine re-attached to Plaintiff's right arm, pulling it from underneath the Plaintiff's body.

98.  Defendant Decker was also able to remove Plaintiff's left arm from underneath the Plaintiff's body.

99.  Defendant Decker placed both of Plaintiff's hands behind his back and placed handcuffs on the Plaintiff's wrists.

100. Plaintiff was bleeding heavily in the right arm following the bites from the police canine.

101. Recognizing the substantial amount of lost blood, Defendant Parkinson applied a tourniquet to Plaintiff's upper right arm.

102.   As a result of Defendants' actions and/or omissions, Plaintiff suffered severe and incalculable damage to his right arm, including but not limited to, permanent nerve damage, which will affect Plaintiff's use of his arm for the rest of his life.

103.   On or about February 12, 2019, criminal charges were filed against the Plaintiff under cause number 08D01-1902-F6-000019.

104.   Defendant Deckard prepared documents and/or an incident report for subsequent filing under cause number 08D01-1902-F6-000019.

105.   Defendant Mullin prepared documents and/or an Affidavit of Probable Cause for subsequent filing under cause number 08D01-1902-F6-000019, which falsely alleged Defendants Deckard, Parkinson, and/or Yoder had probable cause that Plaintiff committed the crime of Public Intoxication, as a Class B Misdemeanor.

106.   Defendant Mullin prepared documents and/or an Affidavit of Probable Cause for subsequent filing under cause number 08D01-1902-F6-000019, which falsely alleged the Plaintiff resisted arrest despite the Defendants' unlawful actions.

**COUNT I: Fourth and Fourteenth Amendments**
**Unlawful Seizure, Unlawful Arrest, and/or False Imprisonment**
**Defendants Decker, Parkinson, and/or Yoder**

107.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

108.   Defendant Decker is a "person" within the meaning of 42 U.S.C. § 1983.

109.   Defendant Decker's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

110.   Defendant Parkinson is a "person" within the meaning of 42 U.S.C. § 1983.

111. Defendant Parkinson's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

112. Defendant Yoder is a "person" within the meaning of 42 U.S.C. § 1983.

113. Defendant Yoder's actions and/or omissions were taken under color of state law based on his authority and official position as a deputy with the CCSD.

114. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

115. To prevail under § 1983, a plaintiff must establish that the government's conduct constituted a seizure and that the seizure was unreasonable. *See Bentz v. City of Kendallville*, 577 F.3d 776, 789 (7th Cir. 2009).

116. A seizure for Fourth Amendment purposes is an intentional limitation of a person's freedom of movement. *See id.*

117. Where a seizure and/or arrest occurs without probable cause, the plaintiff may bring a claim for unreasonable seizure, and/or false imprisonment. *Id.* (quoting *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)).

118. On or about February 9, 2019, Defendants Deckard, Parkinson, and/or Yoder detained, seized, and/or arrested Plaintiff without probable cause.

119. Defendant Deckard's actions or omissions on or about February 9, 2019, effectuated an unreasonable seizure of, unlawful arrest upon, and/or falsely imprisoned the Plaintiff.

120. Defendant Deckard's actions and/or omissions on or about February 9, 2019, caused Plaintiff to suffer harm by constituting a violation and a deprivation of Plaintiff's rights

and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

121.   Defendant Deckard's actions and/or omissions on or about February 9, 2019, were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

122.   Defendant Deckard's conduct is actionable under 42 U.S.C. § 1983.

123.   Defendant Parkinson's actions or omissions on or about February 9, 2019, effectuated an unreasonable seizure of, unlawful arrest upon, and/or falsely imprisoned the Plaintiff.

124.   Defendant Parkinson's actions and/or omissions on or about February 9, 2019, caused Plaintiff to suffer harm by constituting a violation and a deprivation of Plaintiff's rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

125.   Defendant Parkinson's actions and/or omissions on or about February 9, 2019, were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

126.   Defendant Parkinson's conduct is actionable under 42 U.S.C. § 1983.

127.   Defendant Yoder's actions or omissions on or about February 9, 2019, effectuated an unreasonable seizure of, unlawful arrest upon, and/or falsely imprisoned the Plaintiff.

128.   Defendant Yoder's actions and/or omissions on or about February 9, 2019, caused Plaintiff to suffer harm by constituting a violation and a deprivation of Plaintiff's rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

129. Defendant Yoder's actions and/or omissions on or about February 9, 2019, were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights and liberties under the Fourth and Fourteenth Amendments to the United States Constitution.

130. Defendant Yoder's conduct is actionable under 42 U.S.C. § 1983.

**COUNT II: Fourth and Fourteenth Amendment**
**Failure to Protect from Unreasonable Seizure, False Arrest, and/or False Imprisonment**
**Defendants Decker, Parkinson, and/or Yoder**

131. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

132. Defendant Decker is a "person" within the meaning of 42 U.S.C. § 1983.

133. Defendant Decker's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

134. Defendant Parkinson is a "person" within the meaning of 42 U.S.C. § 1983.

135. Defendant Parkinson's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

136. Defendant Yoder is a "person" within the meaning of 42 U.S.C. § 1983.

137. Defendant Yoder's actions and/or omissions were taken under color of state law based on his authority and official position as a deputy with the CCSD.

138. The United States Constitution prohibits law enforcement officers from failing to intervene in another officer's actions, if that officer had reason to know that any constitutional violation had been committed and that officer had a realistic opportunity to intervene to prevent the violation from occurring or continuing.

139.    The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

140.    Defendants Decker, Parkinson, and/or Yoder each had reason to believe that Plaintiff was being prevented from exercising and/or punished for attempting to exercise his Fourth Amendment rights while he was on his property.

141.    Defendants Decker, Parkinson, and/or Yoder each had a realistic opportunity to intervene in the officers' unlawful actions but failed to do so.

142.    The actions and/or omissions of Defendants Decker, Parkinson, and/or Yoder were objectively unreasonable.

143.    As a result, the Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

144.    Those violations caused the Plaintiff to suffer compensable injury.

145.    The Defendants' actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

146.    The Defendants' actions and/or omissions are actionable under 42 U.S.C. § 1983.

**COUNT III: Fourth and Fourteenth Amendments**
**Excessive Force**
**Defendants Deckard, Parkinson, and/or Yoder**

147.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

148.    Defendant Decker is a "person" within the meaning of 42 U.S.C. § 1983.

149.    Defendant Decker's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

150.   Defendant Parkinson is a "person" within the meaning of 42 U.S.C. § 1983.

151.   Defendant Parkinson's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

152.   Defendant Yoder is a "person" within the meaning of 42 U.S.C. § 1983.

153.   Defendant Yoder's actions and/or omissions were taken under color of state law based on his authority and official position as a deputy with the CCSD.

154.   The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

155.   The Fourth Amendment prohibits law enforcement officers from employing greater force than is reasonably necessary to make an arrest.

156.   Law enforcement officers are required to act in an objectively reasonable manner in light of the totality of the facts and circumstances confronting them.

157.   During their interactions with Plaintiff, Defendants Deckard, Parkinson, and/or Yoder used greater force than was reasonably necessary to effectuate Plaintiff's arrest.

158.   The actions and/or omissions of Defendants Deckard, Parkinson, and/or Yoder were objectively unreasonable based on the totality of circumstances the Defendants encountered.

159.   As a result, the Defendants violated Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

160.   Those violations caused the Plaintiff to suffer compensable injury.

161.   The Defendants' actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

162.   The Defendants' actions and/or omissions are actionable under 42 U.S.C. § 1983.

**COUNT IV: Fourth and Fourteenth Amendment**
**Failure to Protect from Excessive Force**
**Defendants Decker, Parkinson, and/or Yoder**

163.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

164.   Defendant Decker is a "person" within the meaning of 42 U.S.C. § 1983.

165.   Defendant Decker's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

166.   Defendant Parkinson is a "person" within the meaning of 42 U.S.C. § 1983.

167.   Defendant Parkinson's actions and/or omissions were taken under color of state law based on his authority and official position as an officer with the DPD.

168.   Defendant Yoder is a "person" within the meaning of 42 U.S.C. § 1983.

169.   Defendant Yoder's actions and/or omissions were taken under color of state law based on his authority and official position as a deputy with the CCSD.

170.   The United States Constitution prohibits law enforcement officers from failing to intervene in another officer's actions, if that officer had reason to know that any constitutional violation had been committed and that officer had a realistic opportunity to intervene to prevent the violation from occurring or continuing.

171.   The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

172.   The Fourth Amendment prohibits law enforcement officers from failing to intervene in another officer's actions, if that officer had reason to know that excessive force was being

used or that any constitutional violation had been committed and that officer had a realistic opportunity to intervene to prevent the violation from occurring or continuing.

173.   Defendants Deckard, Parkinson, and/or Yoder each had reason to believe that excessive force was being used.

174.   Defendants Deckard, Parkinson, and/or Yoder each had a realistic opportunity to intervene in that excessive force but failed to do so.

175.   The actions and/or omissions of Defendants Deckard, Parkinson, and/or Yoder were objectively unreasonable.

176.   As a result, the Defendants violated Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

177.   Those violations caused the Plaintiff to suffer compensable injury.

178.   The Defendants' actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

179.   The Defendants' actions and/or omissions are actionable under 42 U.S.C. § 1983.

**COUNT V: *Monell* Claims**
**Defendants City of Delphi; Carroll County, Indiana; Mullin, in his individual capacity;**
**McCain, in his official capacity, and/or Leazenby, in his official and individual capacities**

180.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

181.   This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

182.   "A local governing body may be liable for monetary damages under §1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and

promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept*., 604 F.3d 293, 303 (7th Cir. 2009).

183. Defendant Mullin was at all times relevant to this Complaint:

    a.  the duly appointed Chief of Police of the DPD;

    b.  the ultimate and final policy making authority for the policies, customs, and/or practices of the DPD.

184. As a matter of individual authority, Defendant Mullin failed to:

    a.  adequately supervise officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

    b.  adequately train officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

    c.  adequately protect members of the public from objectively unreasonable treatment and use of force by officers and/or deputies;

    d.  adequately identify objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

    e.  adequately document objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

    f.  adequately penalize and/or deter objectively unreasonable treatment and use of force against members of the public by officers and/or deputies.

185. Defendant Mullin's actions and/or omissions led to the acceptance of that conduct and the actions of officers and/or deputies in this case.

186.    Defendant Mullin's actions and/or omissions led to a culture of indifference, tolerance, and/or encouragement of officers' and/or deputies' uses of excessive force that has permeated the DPD.

187.    Defendant Leazenby is, or was at all times relevant to this Complaint,

    a.    the duly appointed Sheriff of the CCSD;

    b.    the ultimate and final policy making authority for the policies, customs, and/or practices of the CCSD.

188.    As a matter of individual authority, Defendant Leazenby failed to:

    a.    adequately supervise officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

    b.    adequately train officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

    c.    adequately protect members of the public from objectively unreasonable treatment and use of force by officers and/or deputies;

    d.    adequately identify objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

    e.    adequately document objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

    f.    adequately penalize and/or deter objectively unreasonable treatment and use of force against members of the public by officers and/or deputies.

189.    Defendant Leazenby's actions and/or omissions led to the acceptance of that conduct and the actions of officers and/or deputies in this case.

190.   Defendant Leazenby's actions and/or omissions led to a culture of indifference, tolerance, and/or encouragement of officers' and/or deputies' uses of excessive force that has permeated the CCSD.

191.   Defendant McCain is, or was at all times relevant to this Complaint,

     a.   the duly appointed Chief of the CCSD;

     b.   the ultimate and final policy making authority for the policies, customs, and/or practices of the CCSD.

192.   As a matter of policy, custom, and/or practice, Defendant McCain failed to implement policies, custom, and/or practice to:

     a.   adequately supervise officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

     b.   adequately train officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

     c.   adequately protect members of the public from objectively unreasonable treatment and use of force by officers and/or deputies;

     d.   adequately identify objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

     e.   adequately document objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

     f.   adequately discipline and/or deter objectively unreasonable treatment and use of force against members of the public by officers and/or deputies.

193.   Defendant McCain's actions and/or omissions led to the acceptance of that conduct and the actions of officers and/or deputies in this case.

194.    Defendant McCain's actions and/or omissions led to a culture of indifference, tolerance, and/or encouragement of officers' and/or deputies' uses of excessive force that has permeated the CCSD.

195.    As a matter of policy, custom, and/or practice, Defendant Delphi failed to implement policies, custom, and/or practice to:

   a.    adequately supervise officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

   b.    adequately train officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

   c.    adequately protect members of the public from objectively unreasonable treatment and use of force by officers and/or deputies;

   d.    adequately identify objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

   e.    adequately document objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

   f.    adequately discipline and/or deter objectively unreasonable treatment and use of force against members of the public by officers and/or deputies.

196.    Defendant Delphi's' actions and/or omissions led to the acceptance of that conduct and the actions of officers and/or deputies in this case.

197.    Defendant Delphi's actions and/or omissions led to a culture of indifference, tolerance, and/or encouragement of officers' and/or deputies' uses of excessive force that has permeated the DPD.

198. As a matter of policy, custom, and/or practice, Defendant Carroll County failed to implement policies, custom, and/or practice to:

    a. adequately supervise officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

    b. adequately train officers and/or deputies regarding objectively reasonable treatment and use of force against members of the public;

    c. adequately protect members of the public from objectively unreasonable treatment and use of force by officers and/or deputies;

    d. adequately identify objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

    e. adequately document objectively unreasonable treatment and use of force against members of the public by officers and/or deputies;

    f. adequately discipline and/or deter objectively unreasonable treatment and use of force against members of the public by officers and/or deputies.

199. Defendant Carroll County's actions and/or omissions led to the acceptance of that conduct and the actions of officers and/or deputies in this case.

200. Defendant Carroll County's actions and/or omissions led to a culture of indifference, tolerance, and/or encouragement of officers' and/or deputies' uses of excessive force that has permeated the CCSD.

201. The City of Delphi, Indiana, and/or the DPD were on notice of a custom, policy, and/or practice which encourages, allows, condones, and/or ignores the use of excessive force by officers and/or deputies against members of the public.

202.   Carroll County, Indiana, and/or the CCSD were on notice of a custom, policy, and/or practice which encourages, allows, condones, and/or ignores the use of excessive force by officers and/or deputies against members of the public.

203.   The failure to train, supervise, and/or discipline officers and/or deputies in those and similar previous incidents amounted to deliberate indifference to Plaintiff.

204.   The Plaintiff suffered compensable injury as a direct and proximate cause of the unlawful customs, policies, and/or practices.

**COUNT VI: Battery**
**Defendants Deckard, Parkinson, and/or Yoder**

205.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

206.   A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor.

207.   However, the offense is a Class A misdemeanor if it results in bodily injury to any other person, a Level 6 Felony, if it results in moderate bodily injury, and a Level 5 Felony, if it results in serious bodily injury. *See* Ind. Code § 35-42-2-1.

208.   Defendants Deckard, Parkinson, and/or Yoder battered Plaintiff.

209.   The actions of Defendants Deckard, Parkinson, and/or Yoder were malicious, willful, and/or wanton.

210.   Defendants Deckard, Parkinson, and/or Yoder committed tortious acts against the Plaintiff while working within the scope of their employment with the DPD and/or the CCSD.

211.   Plaintiff suffered compensable harm and damages as a result of the Defendants' illegal and unlawful actions.

**COUNT VII: Confinement**
**Defendants Deckard, Parkinson, and/or Yoder**

212. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

213. A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement, a Level 6 Felony. *See* Indiana Code § 35-42-3-3(a). However, the offense is a Level 4 Felony if it results in moderate bodily injury to any other person, Indiana Code § 35-42-3-3(b)(2), and a Level 3 Felony if it results in serious bodily injury. *See* Indiana Code § 35-42-3-3(b)(3)(A).

214. Defendants Deckard, Parkinson, and/or Yoder criminally confined Plaintiff when they confined him to the ground on his own property.

215. Defendants Deckard, Parkinson, and/or Yoder's criminal confinement of Plaintiff while he was on the ground resulted in moderate and/or serious bodily injury to Plaintiff.

216. The actions of Defendants Deckard, Parkinson, and/or Yoder were malicious, willful, and/or wanton.

217. Defendants Deckard, Parkinson, and/or Yoder committed tortious acts against the Plaintiff while working within the scope of their employment with the DPD and/or CCSD.

218. Plaintiff suffered compensable harm and damages as a result of the Defendants' illegal and unlawful actions.

**REQUESTED RELIEF**

219. Plaintiff respectfully requests:

   a. Damages including compensatory and punitive damages;

   b. Reasonable attorney's fees pursuant to 42 U.S.C. 1988;

   c. All damages and interested allowed under Indiana Code § 34-24-3 *et seq.*;

    d.    All appropriate interest on all amounts that are recovered;

    e.    All appropriate injunctive relief;

    f.    The costs and expenses incurred in the prosecution of this action; and

    g.    All other just and proper relief.

## DEMAND FOR A JURY TRIAL

220.    Plaintiff demands a jury trial pursuant to the Seventh Amendment of the United States and

    Article 1, Section 20 of the Indiana Constitution for all claims.

Respectfully submitted,

*/s/ Austin Andreas*
Austin Andreas, #35155-53
Bradley Keffer, #27195-49
Keffer Hirschauer LLP

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on this date, a copy of the foregoing **Complaint** was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Austin Andreas*
Austin Andreas, #35155-53
Bradley A. Keffer, #27195-49

Keffer Hirschauer LLP
230 East Ohio Street, Suite 400
Indianapolis, Indiana 46204
Keffer@IndyJustice.com
T: (317) 857-0160
F: (855) 641-5311